David L. Kramer, OSB 802904
E-mail: David@KramerLaw.us
David L. Kramer, P.C.
3265 Liberty Road South
Salem, OR 97302
Tel. 503.364.1117
Fax. 503.391.4269
Attorney for Plaintiff

### UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **Y.G., a minor child, by and through his Next Friend, STEVEN J. RUSSELL** <br> Plaintiff, <br><br> vs. <br><br> **THE STATE OF OREGON,** by and through its **DEPARTMENT OF HUMAN SERVICES; MARK WALSH,** an individual; **KATE GUY, an individual, STACEY DAESCHNER,** an individual; **DOES I, II and III,** as individuals; and, **FARIBORZ PAKSERESHT,** in his official capacity as the Director of DHS, <br> Defendants. | Civil No. <br><br> **COMPLAINT** <br> (Alleging 42 U.S.C. 1983 Violations, Abuse Against a Vulnerable and Disabled Person, False Imprisonment, Intentional Infliction of Extreme Emotional Distress, and Negligence; Seeking Money Damages, Punitive Damages and Injunctive Relief) <br><br> **Jury Trial Requested** |

For his Complaint, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.

This action arises under the Constitution and laws of the United States, including 42

U.S.C. §1983. The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331

and 1343(a). Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and, because the

claims arise in this District, venue in the Portland Division is appropriate pursuant to Local Rule

3-2.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.

§1367.

## THE PARTIES

2.

Y.G. is a minor child presently fifteen (15) years-of-age.  At all times since the age of

twelve (12) Y.G. has been a ward of the State of Oregon and a foster child in the care and

custody of the Oregon Department of Human Services.  His wardship proceedings are in Polk

County and at least three of his foster placements have been in Polk County.

3.

The Department of Human Services (DHS) is an agency of the State of Oregon.  Through

its Child Welfare division, DHS is responsible for the safety, care, treatment, and education of its

foster children, as more specifically alleged below.

4.

Steven J. Russell is the Next Friend of Y.G.  Mr. Russell resides in Polk County, Oregon.

He and his wife are former foster parents of Y.G.  They remain available to foster Y.G. The

Russells are among the few persons in the United States who have an ongoing and supportive

adult relationship with Y.G.

5.

Fariborz Pakseresht is the Director of DHS.  Mark Walsh (Walsh) managed the DHS

Child Welfare office in Polk County, Oregon.  Kate Guy (Guy) was a paralegal whom Guy

supervised.  Stacy Daeschner (Daeschner) was the DHS Child Welfare District Manager for

Yamhill and Polk Counties and directly supervised Walsh.  Since the conduct alleged herein

occurred, DHS has fired Walsh and Guy and has removed Daeschner from her position as a

Child Welfare Services Manager.  Upon information and belief, DHS took those personnel

actions, at least in part, because of the misconduct alleged herein.  The removed personnel were

thereafter replaced with the Doe Defendants. The Doe Defendants are DHS managers whose

identities are presently unknown and who continue to violate Y.G.'s constitutional rights as

alleged below.

6.

At all material times, Pakseresht, Walsh, Guy, Daeschner, and the Doe Defendants were

DHS employees. They were acting within the course and scope of their DHS employment and

under color of state law.

## Y.G.'s BACKGROUND

7.

At all material times, Defendants knew or should have known about Y.G.'s background,

including the following:

a)  Y.G. was raised in a Bulgarian orphanage through age twelve (12). Upon information

and belief, he was abused and neglected throughout his time in that orphanage;

b)  Y.G. was brought to the United States for the purpose of being privately adopted by

an Oregon couple. The adoption quickly fell through. Y.G. then became a ward of the

State of Oregon, Department of Human Services (DHS);

c)  Y.G. has severe and ongoing psychological, emotional, and behavioral challenges

arising from his upbringing in the Bulgarian orphanage. These conditions were

aggravated by the wrongful acts alleged herein and require ongoing care, counseling,

treatment, and special education;

d)  Y.G. is educationally delayed.  Testing indicates he functions at a first-grade level;

e) Y.G.'s native language is Bulgarian, but he does not speak or write well in that language; and,

f) Y.G. has limited English proficiency (LEP).  Y.G. needs a qualified Bulgarian interpreter to reasonably and effectively communicate with teachers and caregivers.

**DUTIES OWED BY DEFENDANTS TO FOSTER CHILDREN INCLUDING Y.G.**

8.

At all times during Y.G.'s wardship, Defendants have had a special relationship with him.  They owe Y.G. certain duties as provided by the United States Constitution, federal law, state law, state administrative rules, and the professional standard of care for Oregon child welfare providers, as are more specifically alleged below.

9.

The due process clause of the United States Constitution imposes duties upon DHS and its child welfare providers. These duties are part of the professional standard of care in Oregon for DHS and child welfare providers and include the duties to:

a) Ensure that each child placed in foster care is free from the foreseeable risk of physical, mental, and emotional harms;

b) Ensure that each child placed in foster care receives the services necessary to ensure their physical, mental, intellectual, and emotional well-being in the least restrictive environment; and

c) Provide each child placed in foster care with conditions, treatment, and care consistent with the purpose and assumption of custody.

////

////

10.

The Oregon legislature intends that each foster child have certain essential rights, including those protected by federal and state constitutions, laws, rules, and regulations. ORS 418.201(5). These rights are part of the professional standard of care in Oregon for DHS and child welfare providers. Pursuant thereto, DHS has the duty to:

a)  Place each child in foster care in a foster placement that conforms to nationally recommended professional standards, 42 U.S.C. § 671(a)(10);

b)  Provide for each child placed in foster care a written case plan that provides for safe, appropriate, and stable foster care placements and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

c)  Provide for each child placed in foster care, where reunification is not possible or appropriate, a written case plan that ensures the location of an appropriate adoptive or other permanent home for the child and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(E);

d)  Provide for each child placed in foster care a written case plan that ensures the educational stability of the child while in foster care and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(G);

e)  Maintain a case review system in which each child in foster care has a case plan designed to achieve safe, appropriate, and stable foster care placements, 42 U.S.C. §§ 671(a)(16), 675(5)(A);

f)  Maintain a case review system in which the status of each child in foster care is reviewed every six months by a court or a person responsible for case management for purposes of determining the safety of the child, the continuing

necessity and appropriateness of the foster placement, the extent of compliance with the permanency plan, and the projected date permanency, 42 U.S.C. §§ 671(a)(16), 675(5)(B), 675(5)(C);

g) Provide to each child in foster care quality services to protect his or her safety and health, 42 U.S.C. § 671(a)(22);

h) Not exclude a foster child from participation in, deny the foster child the benefits of, or subject the foster child to discrimination under, any program or activity receiving federal financial assistance, to include DHS. 42 U.S.C. 2000d; and,

i) Provide interpreter services to foster children with a limited ability to speak English. 42 U.S.C. 42 U.S.C. 2000d. 45 CFR 80.3(b)(1).

## 11.

Duties imposed by the American with Disabilities Act (ADA) are part of the professional standard of care in Oregon for child welfare providers, including DHS and its child welfare employees.  The ADA protects children, including Y.G., who experience physical, mental, intellectual, or cognitive disabilities.  The ADA imposes a duty on DHS to provide such children with an array of community-based placements and services to ensure access to the least restrictive environment.  *See,* 42 U.S.C. § 12131(2), 29 U.S.C. § 794, and the respective implementing regulations; 42 U.S.C. § 622(b)(8)(A)(iii); 42 U.S.C. § 675(5)(A); ORS 419B.090 (2)(A)(a) and ORS 419B.090 (3).

## 12.

Duties imposed by Oregon statutes and administrative rules are part of the professional standard of care in Oregon for child welfare providers, including DHS and its child welfare employees. These include the duty to:

a) Issue a Foster Children's Bill of Rights (ORS 418.202; OAR 413-010-0180), including the rights to "be placed in the least restrictive environment that appropriately meets individual needs," to "be provided routine and necessary medical, dental, and mental health care and treatment," to "be protected from physical and sexual abuse, emotional abuse, neglect, and exploitation," to be reunified with their families where possible and to "be provided services to develop a safe permanent alternative to the family" when reunification is not possible. OAR 413-010-0180(1).

b) Develop and implement service plans and agreements that address the needs, rights, and best interests of the child and to advocate for the child's rights when family members, community institutions (such as school/law enforcement), or the Department appear to encroach upon the child's rights. OAR 413-010- 0210. 207.

c) Visit each foster child at least once a month and to have the caseworker determine if the child's needs are being met and if their needs have changed. OAR 413-020-0245(1); OAR 413-080-0054(1).

d) Provide language access services for non-English speaking persons and limited English proficient (LEP) persons. DHS/OHA Policy 010-013. DHS has a duty to:

   i. Provide an inclusive foster care environment where different communication needs are identified and met.

   ii. Decrease communication barriers that prevent foster children from accessing services provided by DHS; and,

   iii. Provide spoken interpreters, communication access real-time translations (CART), bilingual staff, and notice of the availability of language services.

////

13.

The professional standard of care in Oregon for child welfare providers, including DHS and its child welfare employees, also includes the following duties:

a) A duty not to abuse or neglect foster children;

b) A duty to reasonably prevent foster children from being abused or neglected;

c) A duty to provide foster children with reasonable, stable, and safe foster care planning and placements;

d) A duty to provide foster children with reasonable access to education suited for their individual needs;

e) A duty to provide interpreter services to foster children with limited English proficiency

f) A duty to provide reasonably necessary written materials to children with limited English proficiency that are written in their native language; and,

g) Such other duties as may be identified in the discovery of this case.

14.

Defendants violated some or all of the foregoing duties throughout Y.G.s foster care and thereby, caused him damage, as more particularly alleged below.

**DHS' MISCONDUCT**

15.

DHS has consistently denied Y.G. access to Bulgarian interpreters to assist with his care, treatment, and education. This has perpetuated Y.G.'s communication and learning barriers and has unreasonably undermined the efficacy of services provided by foster parents, teachers,

counselors, and health care providers. This has impeded Y.G.'s recovery from his social, emotional, and learning problems and has further aggravated those problems.

16.

Throughout his wardship, and in violation of Oregon's professional standards of care, DHS has repeatedly and unreasonably moved Y.G. in and out of foster homes, residential youth facilities, juvenile detention facilities, educational settings, and at least one motel. DHS unreasonably removed Y.G. from at least one safe and appropriate foster placement with Mr. Steven Russell and his spouse, despite the fact that the Russells were, and still are, willing and able to foster Y.G. with reasonable assistance from DHS. This has impeded Y.G.'s recovery from his social, emotional, and learning problems and has aggravated those problems.

17.

At all material times, Defendants Walsh and Guy were having a sexual affair in the DHS workplace. DHS knew, or should have known, about the affair because, among other reasons, the inappropriate relationship had been the subject of multiple reports to Stacey Daeschner and other DHS management presently unknown. DHS and Daeschner ignored the reports. This sexual relationship significantly impaired DHS and Walsh's ability to provide safe and reasonable care to foster children, including Y.G.

18.

On November 21, 2018, instead of finding a reasonable and safe foster placement for Y.G., with the Russells or otherwise, Walsh arranged for DHS to rent a motel room with two beds at the Best Western Motel in Dallas, Oregon, ostensibly for the purpose of providing Y.G. with temporary foster housing. This DHS practice is sometimes called "motelling" foster children. The practice is and was unreasonable.

19.

Walsh insisted to his subordinates that he would supervise Y.G. in the motel, despite the fact that subordinate staff normally did this and were available. During the night of November 21, 2018, pursuant to Walsh's pre-arranged plan, Defendant Guy came to Y.G.'s motel room. Walsh and Guy then had sex in Y.G.'s motel room, in the bed immediately adjacent to Y.G.'s bed. Y.G. was in his bed and was exposed to sexual sights and sounds during the night. Walsh and Guy knew this would happen.

20.

Upon information and belief, the next day Walsh recommended to Y.G.'s juvenile probation officer that Y.G. be confined in a secure juvenile detention facility – the equivalent of jail – in lieu of being housed at a reasonable foster placement. Y.G. was then confined in the Yamhill County Juvenile Detention Facility, at least in part because of Walsh's recommendation.

21.

Following Y.G.'s confinement in the Yamhill County Juvenile Detention Facility, DHS caused Y.G. to be transferred outside of Oregon for confinement at the Red Rock Academy Residential Treatment Center (Red Rock) located near St. George, Utah. Red Rock held itself out as a psychiatric residential treatment center for teens who require structure and treatment beyond that available from traditional foster homes, traditional outpatient clinics, or intensive outpatient clinics. The placement of Y.G. and other Oregon children in Red Rock was pursuant to a contract that facility's contract with DHS. Oregon taxpayers paid over one million dollars for the contract.

/////

/////

22.

Through its contract with Red Rock, and the placement of Oregon children in Utah, DHS intended to minimize. or to all together avoid, its responsibilities to Oregon foster children. DHS completely deferred to Red Rock for the safety, care, treatment, and education of Oregon children.  DHS did not reasonably monitor the contract with Red Rock and did not reasonably ensure that Red Rock was providing for the safety, care, treatment, and education of Oregon children, including Y.G., and instead, the children placed out of state were intentionally put "out of sight and out of mind."

23.

While at Red Rock, Y.G. and other Oregon children were denied reasonable housing, safety, care, treatment, and education.  Y.G. was unreasonably denied an interpreter and materials written in Bulgarian to assist with his safety, care, treatment, and education.  With the knowledge and acquiescence of Red Rock staff, Y.G. was bullied and assaulted by bigger and older residents. On April 28, 2019, Y.G. and other children were subjected to a riot.  Red Rock staff allowed the riot to escalate and encouraged some of the rioters to harm other children.

24.

As a result of the riot, Utah child welfare authorities, and eventually DHS, investigated Red Rock and belatedly discovered the following unreasonable and unsafe conditions:

a)  Red Rock hired or retained staff who were not qualified to safely manage students;

a)  Red Rock failed to do background checks of prospective staff, including at least one convicted felon;

b)  Red Rock failed to adequately train and supervise staff to keep children safe;

c) Red Rock failed to maintain reasonable staffing levels necessary to keep children safe;

d) Red Rock overworked and fatigued staff to the point they could not keep children safe by requiring them to work double shifts seven days a week;

e) Red Rock failed to reasonably intervene and safely manage children, including groups of children, who were threatening and violent to other children

f) Red Rock permitted, or failed to reasonably prevent children from assaulting or physically restraining other children through the use of choke holds and otherwise;

g) Red Rock permitted or failed to reasonably prevent staff from mistreating children by insulting and disrespecting them, by inciting violence among children, and by physically abusing children;

h) Red Rock failed to report dangerous and potentially dangerous incidents involving students;

i) Red Rock failed to remove objects and debris that students could and did use as weapons; and

j) Such other unsafe and unreasonable conditions as may be identified in the discovery of this case.

25.

As a result of these conditions, Red Rock failed to reasonably provide Y.G. with care, treatment and education, and failed to prevent or manage the riot which occurred on April 28, 2019. After the riot and resulting investigations, Red Rock's license to do business in Utah was suspended and that facililty closed. DHS finally removed the Oregon foster children it had placed there.

26.

DHS then moved Y.G. to a residential facility in Roseburg, Oregon.  As was the

case in Utah, DHS knew that this facility was geographically removed from Y.G.'s limited

support system in Polk County, which included the Russells,  Y.G.'s Court-appointed Special

Advocate, Y.G.'s caseworker, and his Juvenile Court attorney.  DHS also knew that Y.G. would

not receive reasonable care, treatment, counseling, and education there as a result, in part, of a

complete lack of access both to Bulgarian interpreters and reasonably required materials printed

in the Bulgarian language.

27.

DHS' unreasonable and unlawful conduct has damaged Y.G. and will continue to damage

him. Among other things:

a)  It aggravates his distrust of caregivers and other authority figures;

b)  It aggravates his inability to successfully interact with his peers, providers, and foster

parents;

c)  It aggravates his inability to deal with stressors in his environment, to avoid

additional physical and emotional abuse, to avoid becoming unduly frustrated from

those circumstances, and to avoid acting out with others as a result of his frustrations;

d)  It keeps him stuck at a first-grade education level;

e)  It deprives him of any reasonable opportunity to benefit from emotional and

psychological care, treatment and counseling;

f)   It prevents him from assimilating into society and into the Bulgarian community in

Oregon;

g) In the future, it will unreasonably limit his ability as an adult to communicate effectively with people, to obtain and keep a job, to learn a trade, to stay safe, and to exercise self-control, as would be expected of someone who either had not been continuously victimized or who was not denied reasonable care and treatment for victimization.

28.

All of the foregoing has caused economic and non-economic damages to Y.G. He has and will suffer emotional pain and suffering, including a constant feeling of failure and isolation. After he leaves the custody of DHS, he will incur costs for interpreter services, remedial education, counseling and psychological treatment, and wage loss. The exact amount of damage will be proven at trial. Plaintiff estimates that his economic damages will exceed $2 million and his non-economic damages will exceed $5 million.

29.

Timely and adequate written notice of Y.G.'s tort claims was provided to the Oregon Department of Administrative Services, Risk Management Division, on or about March 22, 2019.

**FIRST CLAIM FOR RELIEF**
(42 USC §1983 Civil Rights Substantive Due Process Claim Against Walsh and Guy)

30.

Plaintiff incorporates by this reference all the allegations set forth above.

31.

Y.G. has a liberty interest and a substantive due process right to be free from child abuse and neglect. These rights are protected by the Fifth and Fourteenth Amendments to the United States Constitution.

32.

Walsh and Guy violated those rights by confining Y.G. in a motel for purposes of having sex in front of a child, as alleged above.

33.

The acts of Walsh and Guy were unreasonable, wrongful, intentional, willful, wanton, malicious, oppressive, and were done with reckless indifference to Y.G.'s constitutional rights. Their actions shock the conscience of reasonable persons. Walsh and Guy's wrongful motives included:

a)  Indulging their prurient desire to have sex in front of a child;

b)  Having taxpayers pay the cost of the motel(s) where they met for sex;

c)  Serving DHS by implementing its practice of "motelling" foster children as an alternative to spending the time and money necessary to find suitable foster placements; and

d)  Such other motives as may be identified in the discovery of this case.

34.

Walsh and Guy's wrongful acts damaged Y.G. as alleged above. Y.G. is entitled to recover his economic and non-economic damages, and to an award of punitive damages, pursuant to 42 USC §1983.  Y.G. is entitled to recover the reasonable value of the litigation costs and attorney's fees incurred in bringing his civil rights claims pursuant to 42 USC §1988.

**SECOND CLAIM FOR RELIEF**
(42 USC §1983 Fourth Amendment Civil Rights Claim Against Walsh)

35.

Plaintiff incorporates by this reference all the allegations set forth above.

/////

36.

At all material times, Y.G. had a right to be free from unreasonable government seizure of his person. This right is protected by the Fourth and Fourteenth Amendment to the United States Constitution.

37.

Walsh violated Y.G.'s constitutional rights by wrongfully confining Y.G. in the motel for the purpose of having sex in front of a child.

38.

Walsh acted without lawful authority, without probable cause, without a warrant, and without any objectively reasonable basis. The wrongful acts of Walsh and Guy were unreasonable, wrongful, intentional, willful, wanton, malicious, oppressive, were done with reckless indifference to Y.G.'s constitutional rights. Their acts shock the conscience of reasonable persons.

39.

Walsh's wrongful acts damaged Y.G. as alleged above. Y.G. is entitled to recover his economic and non-economic damages, and to an award of punitive damages, pursuant to 42 USC §1983. Y.G. is entitled to recover the reasonable value of the litigation costs and attorney's fees incurred in bringing his civil rights claims pursuant to 42 USC §1988.

**THIRD CLAIM FOR RELIEF**
(42 USC §1983 Substantive Due Process Claim Against Walsh for Child Abuse)

40.

Plaintiff incorporates by this reference all the allegations set forth above.


/////

41.

Y.G. had liberty interest and a substantive due process right to be free from child abuse. This right is protected by the Fifth and Fourteenth Amendments to the United States Constitution.

42.

Upon information and belief Walsh violated Y.G.'s constitutional right to be free from child abuse by recommending that Y.G. be put into juvenile detention for the following purposes:

a) To deter, intimidate, and isolate Y.G., so he would be less likely to report the wrongful sexual conduct of Walsh and Guy to DHS or to law enforcement;

b) To prevent DHS' "motelling" practices from being discovered and sanctioned as a potential violation of a Court Order entered by the United States District Court in the case of *A.R. et al. v. State of Oregon, Department of Human Services, et. al.,* United States District Court for the District of Oregon, Case No. 3:16-cv-01895-YY; and

c) Such other wrongful purposes as may be identified in the discovery of this case.

43.

Walsh's wrongful acts were unreasonable, wrongful, intentional, willful, wanton, malicious, oppressive, were done with reckless indifference to Y.G.'s constitutional rights. Walsh's acts shock the conscience of reasonable persons.

44.

Walsh's conduct caused the damage alleged above. Y.G. is entitled to recover his economic and non-economic damages and punitive damages, pursuant to 42 USC §1983. Y.G. is

entitled to recover the reasonable value of the litigation costs and attorney's fees incurred in bringing his civil rights claims pursuant to 42 USC §1988.

## FOURTH CLAIM FOR RELIEF
(42 USC §1983 Civil Rights Claim for Discrimination based on Nationality against Walsh, Daeschner, and Doe Defendants)

45.

Plaintiff incorporates by this reference each of the allegations above.

46.

Y.G. is a person of Bulgarian nationality. He was born in Bulgaria and immigrated to the United States as a minor child for the purpose of being adopted here.

47.

Walsh, Guy, and Daeschner denied Y.G. access to Bulgarian interpreters and to materials written in Bulgarian which were reasonably necessary for Y.G.'s safety, care, treatment, and education. The Doe Defendants continue to deny access to Y.G.  Defendants knew, and presently know, that without a Bulgarian interpreter, Y.G. is effectively denied reasonable safety, care, treatment, and education.  In choosing to deny language access to Y.G., Defendants expected and accepted that Y.G. would fall through the cracks of its system until he would eventually "time out" of the foster system at age 18.

48.

Defendants' conduct was unreasonable, wrongful, intentional, willful, wanton, malicious, oppressive, and was done with reckless indifference to Y.G.'s constitutional rights. Defendants' conduct shocks the conscience of reasonable persons.

/////

49.

Defendants' conduct caused the damage alleged above.  Y.G. is entitled to recover his

economic and non-economic damages and punitive damages pursuant to 42 USC §1983.  Y.G. is

entitled to recover the reasonable value of the litigation costs and attorney fees incurred in

bringing his civil rights claims pursuant to 42 USC §1988.

**FIFTH CLAIM FOR RELIEF**
(42 USC §1983 Civil Rights Claims for Injunctive Relief Against DHS and Director Fariborz
Pakseresht)

50.

Plaintiff incorporates by this reference all the allegations set forth above.

51.

Some or all of the foregoing constitutional violations are ongoing or are likely to reoccur.

Y.G. is entitled to a permanent injunction pursuant to 42 U.S.C. §1983.  The constitutional

violations warrant appropriate injunctive relief against DHS to include:

a)  An Order requiring DHS to provide Y.G. with a Bulgarian interpreter to assist with
    his care, counseling, foster placement, and education;

b)  An Order requiring DHS to stop its practice of "motelling" Y.G. without Y.G.'s
    written approval or the explicit Order of the Polk County Juvenile Court;

c)  An Order prohibiting DHS from placing Y.G. outside of the State of Oregon without
    Y.G.'s  written approval or the explicit Order of the Polk County Juvenile Court;

d)  An Order to provide Y.G. with reasonable foster placements in Oregon; and

e)  Such other relief as the Court may deem appropriate.

/////

/////

## SIXTH CLAIM FOR RELIEF

(ORS 124.100 Claim Against DHS for Abuse Against a Vulnerable and Disabled Person)

52.

Plaintiff incorporates by reference each allegation stated above.

53.

Y.G. is a "person with a disability" as defined by ORS 124.100(1)(d) in that his mental impairments will likely continue for not fewer than twelve (12) months and prevent him from performing substantially all the ordinary duties of occupations of which a "normal" person is capable, having due regard for his training, experience, and circumstances. Y.G. is also a "vulnerable person" within the meaning of ORS 124.100(1)(e), because he is and has been susceptible to force, threat, duress, coercion, persuasion, or physical or emotional injury as a result of his impairments.

54.

By "motelling" Y.G. as alleged above, by having sex in his presence, and by subjecting him to assaults at Red Rock, DHS committed physical abuse for purposes of ORS 124.105(1) in that:

a) DHS committed criminal mistreatment in the second degree in violation of ORS 163.200(1), because after it assumed the temporary care, custody and responsibility for Y.G.'s supervision, it was criminally negligent in withholding adequate physical care from Y.G. in the form of providing him with reasonable housing free of sexual and physical abuse as alleged above; and

b) DHS imposed an unreasonable physical constraint on Y.G. in violation of ORS 124.105(2), because it confined Y.G. in a motel room where he could not escape the sexual acts being performed there.

55.

As alleged above, Y.G. suffered injury and damage as a result of the foregoing abuse, ORS 124.100(2) provides that the Court shall award Y.G. the following relief:

a)  An amount equal to three times all of his economic damages, or $500.00, whichever is greater;

b)  An amount equal to three times all of his non-economic damages; and

c)  Reasonable attorney fees and costs incurred on behalf of Y.G. in bringing this action;

56.

As required by ORS 124.100(6), a copy of this  Complaint has been, or will be, served on the Attorney General on or before thirty (30) days from the date this action is commenced.

**SEVENTH CLAIM FOR RELIEF**
(False Imprisonment Against DHS)

57.

Plaintiff incorporates by this reference each of the allegations set forth above.

58.

By wrongfully confining Y.G. in the motel for the purpose of enabling its employees to have sex in Y.G.'s presence, DHS, by and through Walsh and Guy, unreasonably restrained Y.G.'s freedom of movement.

59.

 Defendants acted willfully, wrongfully, intentionally, without lawful authority, without probable cause, and without any objectively reasonable basis to restrain Y.G. at the motel for the purposes alleged above.

////

/////

Page 21 -   Complaint, *Y. G. v.  State of Oregon et. al.*

60.

Defendants' conduct caused Y.G. to suffer economic and non-economic damages in an

amount to be determined at trial.

**EIGHTH CLAIM FOR REIEF**
(Intentional Infliction of Extreme Emotional Distress; Against DHS)

61.

Plaintiff incorporates by this reference each of the allegations set forth above.

62.

The conduct of Walsh and Kay at the motel, and the conduct of DHS in confining Y.G. to

the motel in the circumstances alleged above, constituted child abuse as defined by DHS

policies, practices, and procedures and by ORS 419B.050(1)(a), in that those actions caused:

a) The intentional infliction of a mental injury to a child caused by cruelty with due

   regard to the child's culture, and resulting in observable and substantial impairment

   of the child's mental or psychological ability to function. ORS 419B.050(1)(a)(B);

b) The negligent treatment or maltreatment of a child, including, but not limited to, the

   failure to provide adequate shelter likely endangering the health or welfare of the

   child. ORS 419B.050(1)(a)(F); or,

c) Threatened harm to a child, including subjecting Y.G. to a substantial risk of harm to

   his health or welfare. ORS 419B.050(1)(a)(G).

63.

By engaging in the foregoing conduct Defendants intended to inflict severe mental or

emotional distress on Y.G. or knew that distress was substantially certain to result from their

conduct.  Their acts caused the severe mental and emotional distress Y.G. suffered and were an

extraordinary transgression of the bounds of socially tolerable conduct that exceeded any reasonable limit of social toleration.

64.

Defendants' conduct caused Y.G. to suffer economic and non-economic damages in an amount to be determined at trial.

**NINTH CLAIM FOR RELIEF**
(Negligence; Against DHS)

65.

Plaintiff incorporates by reference each of the allegations set forth above.

66.

DHS was negligent, and its negligence was a foreseeable cause of the damage suffered by Y.G., in one or more of the following respects:

a) DHS failed to reasonably investigate and stop the work-place affair of Walsh and Guy when it knew or should have known that the affair would directly and indirectly cause Walsh and Guy to neglect their duties to help foster children, including Y.G.;

b) DHS failed to reasonably supervise Walsh and Guy in such a manner as to prevent the abuse, neglect, and wrongful restraint of Y.G.;

c) DHS failed to reasonably train Walsh and Guy in such a manner as to prevent the abuse, neglect, and wrongful restraint of Y.G.;

d) DHS failed to reasonably protect Y.G. from child abuse, emotional abuse, and neglect as alleged above;

e) DHS unreasonably placed Y.G. in the Red Rock facility under the circumstances alleged above;

    f)  DHS failed to provide Y.G. with an interpreter and with reasonably necessary materials printed in the Bulgarian language when it knew or should have known that:

       i.  Attempts to provide Y.G. with effective mentorship, counseling, and psychological care and treatment would be futile without language assistance;

      ii.  Attempts to educate Y.G. beyond a first-grade level would be futile without language assistance;

     iii.  Attempts to provide successful foster care placements would be futile without language assistance; and

     iv.  Attempts to help Y.G. successfully assimilate into society would be futile without language assistance.

    g)  DH failed to provide or implement a written case plan to provide for Y.G.'s best interests, including safe, appropriate, and stable foster care placements;

    h)  DHS failed to provide or implement a written case plan to ensure the educational stability of Y.G. while in foster care and failed to implement such a plan;

    i)  DHS failed to maintain a case review system to ensure that the foregoing written case planning process took place;

    j)  DHS failed to perform the duties alleged above; and

    k)  In such other ways as may be identified in the discovery of this case.

67.

DHS' conduct was unreasonable.  It violated the applicable professional standards of care. DHS' negligence was a foreseeable cause of the damage to Y.G. and caused Y.G. to suffer economic and non-economic damages in an amount to be determined at trial.

Page 24 -   Complaint, *Y. G. v.  State of Oregon et. al.*

**WHEREFORE,** Plaintiff requests that a Judgment be entered in his favor and against Defendants awarding the following relief:

a) Against Defendant Walsh, for each of Claims 1, 2, 3, and 4, which allege 42 U.S.C. §1983 violations, a money judgment for:

    i. Economic damages in an amount to be proven at trial and expected to be not less than $2 million dollars;

    ii. Non-economic damages in an amount to be proven at trial and expected to be not less than $5 million dollars;

    iii. Punitive damages in an amount to be determined by the jury; and

    iv. An amount equal to Plaintiff's reasonable attorney fees and litigation costs incurred in bringing this matter.

b) Against Defendant Guy, for Claim 1, which alleges a 42 U.S.C.§1983 violation, a money judgment for:

    i. Economic damages in an amount to be proven at trial and expected to be not less than $2 million dollars;

    ii. Non-economic damages in an amount to be proven at trial and expected to be not less than $5 million dollars;

    iii. Punitive damages in an amount to be determined by the jury; and,

    iv. An amount equal to Plaintiff's reasonable attorney fees and litigation costs incurred in bringing this matter.

c) Against Defendants Walsh, Daeschner, and Does for Claim 4, which alleges a 42 U.S.C.§1983 violation, a money judgment for:

    i.    Economic damages in an amount to be proven at trial and expected to be not less than $2 million dollars;

    ii.    Non-economic damages in an amount to be proven at trial and expected to be not less than $5 million dollars;

    iii.    Punitive damages in an amount to be determined by the jury; and,

    iv.    An amount equal to Plaintiff's reasonable attorney fees and litigation costs incurred in bringing this matter.

d)  Against the State of Oregon, Department of Human Services, and Defendant Fariborz Pakseresht, in his official capacity as the DHS Director, for Claim 5, alleging a 42 U.S.C. §1983 claim for injunctive relief, an Order granting the relief alleged in Paragraph 51 together with such other injunctive relief as the Court may deem appropriate, and a money judgment in an amount equal to Plaintiff's reasonable attorney fees and litigation costs incurred in bringing this matter.

e)  Against the State of Oregon, Department of Human Services, for Claim 6, alleging the abuse of a vulnerable person, a money judgment for:

    i.    An amount equal to three (3) times Plaintiff's economic damages, or $500,00, whichever is greater;

    ii.    An amount equal to three (3) times Plaintiff's non-economic damages; and

    iii.    Plaintiff's reasonable attorney fees incurred in bringing this action.

f)  Against the State of Oregon, Department of Human Services, for each of claims 7, 8, and 9, a money judgment for:

    i.    Economic damages in an amount to be proven at trial and expected to be not less than $2 million dollars;

      ii.    Non-economic damages in an amount to be proven at trial and expected to be

           not less than $5 million dollars; and

g)  For such other equitable relief as the Court may deem appropriate.

DATED this 19th day of November, 2019.

        DAVID L. KRAMER, P.C.

      By:  _/s/_____

           David L. Kramer, OSB #802904
           E-mail: david@kramerlaw.us
           David L. Kramer, P.C.
           3265 Liberty Road South
           Salem, OR 97302
           Tel. 503.364.1117  FAX 503.391.4269
           Attorney for Plaintiff