ELLEN F. ROSENBLUM
Attorney General
JAMES S. SMITH #840932
Senior Assistant Attorney General
AARON D. KELLEY #210615
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: James.S.Smith@doj.state.or.us
        aaron.kelley@doj.state.or.us

Attorneys for Defendants State of Oregon, Daeschner, and Pakseresht

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| Yanko Gratreak, | Case No. 3:19-cv-01870-AR |
| Plaintiff, | STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | *Oral Argument Requested* |
| THE STATE OF OREGON, by and through its DEPARTMENT OF HUMAN SERVICES; MARK WALSH, an individual; KATE GUY, an individual; STACEY DAESCHNER, an individual; DOES I, II and III, as individuals; and, FARIBORZ PAKSERESHT, in his official capacity as the Director of DHS, | |
| Defendants. | |

## LR 7-l

Counsel for the parties have conferred but have been unable to reach agreement on the issues addressed in this motion.

## MOTION

Pursuant to FRCP 56, defendants Daeschner, Pakseresht and ODHS move for partial summary judgment on plaintiff's Fourth, Fifth and Sixth Claims for Relief. This motion is based upon the Points and Authorities below and the declarations of Stacey Daeschner, Michael Huggins and Shawnna Bennett.

## POINTS AND AUTHORITIES

### I.    Background

Plaintiff Yanko Gratreak was a 13-year-old boy who had been raised in a Bulgarian orphanage when he came to Oregon to be adopted. The adoption failed and he ended up being placed by the juvenile court with the Oregon Department of Human Services. Plaintiff was placed in multiple foster homes and group settings, most of which failed because of behavioral issues, and he spent a good deal of time in juvenile detention. Late in the evening of November 20, 2018, plaintiff was removed from his foster home because the foster parents reported that he hit the family dog with a flashlight. Lacking any suitable placement on short notice, pursuant to agency policy the boy was placed in a hotel room for the night in the care of a pair of ODHS workers. Plaintiff contends that the ODHS workers supervising him in the hotel engaged in sexual congress during the night.

Soon thereafter, in order to meet his therapy needs in a secure setting, plaintiff was placed at the Red Rock Academy in Utah. There he was assaulted by some other youths. Eventually, the facility was closed by the state of Utah because of multiple serious problems in care.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiff has sued ODHS and several current and former ODHS workers on multiple legal theories relating to three issues: 1) the events in the hotel room; 2) the events at Red Rock; and 3) an alleged failure by ODHS to provide adequate language interpretation services.

## II. State Defendants' Position

The state defendants (Daeschner, Pakseresht and ODHS) are entitled to partial summary judgment dispatching three of plaintiff's claims:

1) The Fourth Claim for Relief alleges that defendant Daeschner discriminated against plaintiff by failing to provide interpreter services. This claim fails because it was not Daeschner's responsibility to make decisions concerning plaintiff's need for an interpreter. Plaintiff sued the wrong ODHS worker(s) on this claim and Daeschner is entitled to judgment.

2) The Fifth Claim for Relief alleges plaintiff is entitled to an injunction against ODHS and its Director. This claim fails because plaintiff is now an adult who has voluntarily chosen to remain in the care of ODHS and can terminate the relationship with the agency at any time. Accordingly, the facts alleged as supporting the claim are not capable of repetition and the claim is moot.

3) The Sixth Claim for Relief alleges a claim under Oregon's Vulnerable Person's Act (ORS 124.100). The Sixth claim alleges alternative arguments: 1) that ODHS's acts constitute criminal mistreatment; and or 2) that ODHS actions imposed an unreasonable physical constraint on a vulnerable person in violation of the statute. This claim fails because the intent element for the crime of criminal mistreatment cannot be established and because placement of the youth in a hotel room does not qualify as physical restraint under ORS 124.105.

Page 3 -   STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
JSS/sm5/

**III.    Facts Relevant to the Challenged Claims**

**A.    Fourth Claim**

**(facts from the Declaration of Stacey Daeschner)**

Yanko Gratreak was placed in ODHS care by the juvenile court June 6, 2018.  (Par. 3).
His care was managed by ODHS permanency worker Jackie Nix, who worked in the Polk
County office.  *Id.*  Nix's supervisor was Chad Blackman.  *Id.*

Stacey Daeschner was the Program Director for the ODHS offices in Polk and Yamhill
counties from June of 2012 until February 7, 2019.  (Par. 1).  The Program Director is the
agency's top manager for a county office.  As Program Director, Daeschner had direct
supervisory authority over eight workers in Polk and Yamhill counties; those eight workers did
not include Nix or her supervisor.  (Par. 2).  Nix remained plaintiff's permanency worker long
after Daeschner left the Program Director role February 7, 2019.  (Par. 3).

Permanency workers are responsible for seeing that children on their case load get the
services that are needed to help them thrive.  (Par. 3).  For Yanko Gratreak, decisions about
whether he needed an interpreter or other language related services were made by Jackie Nix and
her supervisor.  *Id.*

During her time as the Program Manager for Polk and Yamhill counties, Daeschner did
not make decisions about services needed by particular children unless a particular need caused
an unusual administrative expense.  (Par.2).  Her role was management and did not involve the
specific decisions that involved plaintiff.  *Id.*  The decisions concerning plaintiff's needs were
made by his permanency worker (Nix) and her supervisor (Blackman).  (Par. 3).

**B.    Fifth Claim**

**(all facts from the Declaration of Michael Huggins)**

Plaintiff was born March 3, 2004.  (Ex. 1).  Plaintiff was assigned to the care of ODHS's
Child Welfare Division by the juvenile court on June 4, 2018.  *Id.*  During his time under the

Page 4 -    STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
    JSS/sm5/

supervision of Child Welfare, plaintiff was placed in many different homes and settings, most of which failed because of his extreme behavior issues. The placements attempted for plaintiff are detailed in Ex. 1 to the declaration of Michael Huggins.

Now 20 years of age, plaintiff remains in the care of ODHS under a voluntary program called Another Permanency Plan Living Arrangement ("APPLA"). (Par. 3). Plaintiff is placed only at facilities that he approves. At any time, plaintiff can choose to terminate his relationship with ODHS. (Par. 4).

### C.    Sixth Claim

### (facts from the declaration of Shawnna Bennett)

On the evening of November 21, 2018, plaintiff's foster parent reported plaintiff had abused the family dog with a flashlight. (Par. 3). Plaintiff had a history of animal abuse from a prior placement. ODHS workers determined plaintiff could not stay in the placement. *Id.* Lacking any alternatives because of the late hour, the decision was made that plaintiff needed to be housed in a hotel. *Id.*

ODHS had a policy concerning emergency housing for youth in care, and the policy included staying in a hotel if certain criteria were present. (Par. 2). The criteria were present, and plaintiff was placed overnight in a hotel with two workers, both of whom were trained in agency policy and qualified to supervise youth in a hotel. (Par. 4). Plaintiff was driven to the hotel by an ODHS worker, just as he would have been in any placement. (Par. 3).

While staying in the hotel, plaintiff was not restrained, handcuffed or tied down in any way. He could have left of his own volition, although leaving the hotel room would have caused him to be categorized as a "runaway", just as he was when he ran from other placements.

Page 5 -    STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
           JSS/sm5/

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## IV.    Discussion

### A.    The Fourth Claim for Relief names the wrong state worker.

The Fourth Claim for Relief alleges Daeschner and Walsh violated plaintiff's constitutional rights by failing to provide interpreter services.  The decisions about whether an interpreter is needed for a child in the care of ODHS are made by the permanency worker for the child in conjunction with the permanency worker's supervisor.  For plaintiff, at relevant times the permanency worker was Jackie Nix who was supervised by Chad Blackman.  Neither Nix nor Blackman are parties to the case.

Instead, the Complaint alleges the claim against Daeschner and Walsh.  At relevant times, Daeschner was the Program Director for Polk and Yamhill Counties.  The Program Director is the top ranked manager for an ODHS county office.  Daeschner's role was such that she ran two different counties.  Daeschner was never involved in making decisions concerning the use of interpreters or other services for plaintiff.  She was a manager who did not deal with details of care for children in her area of responsibility.  Daeschner's declaration makes clear that she did not deal with decisions about what services were appropriate for plaintiff.

While supervisory liability under Section 1983 can exist in some circumstances, those circumstances are not present in this case.  Supervisors are not liable under a *respondeat superior* theory.  Instead, supervisory personnel can be liable only if they play an affirmative part in the alleged deprivation of constitutional rights.  *Rise v State of Oregon,* 59 F.3d 1556 (9th Cir. 1995). The supervisor has to set in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict constitutional injury.  *Graves v City of Coeur D'Alene,* 339 F.3d 828 (9th Cir. 2003).  In this case, there are no allegations or evidence that acts by Daeschner caused the alleged discrimination against plaintiff, and no evidence that Daeschner set in motion a series of acts that she knew or should have known would result in discrimination.  Plaintiff simply sued the wrong state workers for the discrimination alleged.

Page 6 -    STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
JSS/sm5/

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.      The Fifth Claim for Relief is moot.**

Plaintiff's Fifth Claim alleges an entitlement to injunctive relief against ODHS and its Director.  Plaintiff seeks an injunction requiring ODHS to provide an interpreter, requiring ODHS to stop "hoteling" plaintiff, preventing ODHS from placing plaintiff out of state and requiring "reasonable foster placements".  Because the agency's current relationship with plaintiff is voluntary and can be terminated by plaintiff at any time, the facts alleged as supporting the claim for injunctive relief are not capable of repetition, making the claim moot.

When a plaintiff seeks prospective relief like an injunction, plaintiff must show injury in fact by demonstrating that plaintiff is realistically threatened by a repetition of the alleged injury. *Wise v City of Portland,* 539 F.Supp. 3d 1132 (D. Or. 2021).  The burden of showing the likelihood of a recurrence is firmly on plaintiff.  *Id.*

In this case, the chance of a recurrence is exactly zero.  Plaintiff's age and his relationship with ODHS have changed from the time the initial pleading was created.  If plaintiff dislikes a placement or the services being provided, he can simply terminate his relationship with ODHS and substitute his own judgment.  Accordingly, the Fifth Claim is moot, and ODHS and its Director are entitled to judgment.

**C.      There is no issue of fact concerning the Sixth Claim.**

Plaintiff alleges ODHS violated the VPA in two respects: 1) committing criminal mistreatment in the second degree by housing plaintiff in the hotel; and 2) using an unreasonable physical restraint.

**i.      Criminal Mistreatment**

Criminal Mistreatment in the Second Degree is defined by ORS 163.200:

> ORS 163.200
> Criminal mistreatment in the second degree
>
> (1)      A person commits the crime of criminal mistreatment in the
>             second degree if, with criminal negligence and:

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

     (a)      In violation of a legal duty to provide care for another person, the person withholds necessary and adequate food, physical care or medical attention from that person; or

     (b)      Having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, the person withholds necessary and adequate food, physical care or medical attention from that person.

     (2)      Criminal mistreatment in the second degree is a Class A misdemeanor.

     (3)      As used in this section, "legal duty" includes but is not limited to a duty created by familial relationship, court order, contractual agreement or statutory or case law. [1973 c.627 §2; 1993 c.364 §1]

The required state of mind for the crime of criminal mistreatment (criminal negligence) is defined in ORS 161.085(10):

     (10)     "Criminal negligence" or "criminally negligent," when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. [1971 c.743 §7; 1973 c.139 §2]

In this case, the agency had a policy which described the circumstances under which youth in the care of ODHS would be housed in a hotel and described the training and qualifications for workers supervising youths housed in a hotel. The lead worker in the hotel room that night was trained and qualified to undertake the duty. For plaintiff to establish Criminal Mistreatment in the Second Degree, plaintiff would have to establish that sending properly trained workers to follow an applicable agency policy is criminal negligence: a gross deviation from the standard of care that a reasonable person would observe in the situation. Since no reasonable juror could conclude that sending qualified and trained workers to carry out

Page 8 -    STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
       JSS/sm5/

an agency policy was criminal negligence, the argument that ODHS has violated the VPA through criminal mistreatment fails.

### ii. Unreasonable Physical Restraint

ORS 124.105(2) provides that "[a]n action may be brought under ORS 124.100 for physical abuse if the defendant used any unreasonable physical constraint on the vulnerable person or subjected the vulnerable person to prolonged or continued deprivation of food or water." The statute does not define the phrase "unreasonable physical constraint," and Oregon courts have not yet interpreted the phrase.[1]

Oregon courts apply a familiar three step process for the interpretation of statutes: 1) look to the text and context of the statute; 2) if that is not conclusive, look to legislative history; and 3) if the first two steps are not conclusive, look to maxims of statutory construction. *Portland Gen. Elec. Co. v. Bureau of Lab. and Industries*, 317 Or. 606, 610-12 (1993). In reviewing ORS 124.105(2), the language and context are not conclusive, leading to consideration of legislative history.

The legislative history of ORS 124.105 indicates that the Legislature intended for "unreasonable physical constraint" to require a restriction of free movement and physical force. On May 12, 1995, one of the authors of Senate Bill 943 testified that civil elder abuse statutes in Arizona and California were used as references throughout the drafting process for the Oregon bill. *Public Hearing on S.B. 943 Before the House Committee on Judiciary*, 68th Leg. Assemb., Reg. Sess. 68 (Or. May 12, 1995) (Testimony of Lisa Bertalan). Because the statute that was eventually enacted by Oregon contains language very similar to California's statute,

---

[1] An Oregon federal case addresses the phrase, but not in a manner that assists the analysis in this case. *See, GM ex rel Mason v Lincoln County School District,* 2017 WL 2804949 (D. Or. 2017).

Page 9 - STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
JSS/sm5/

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Oregon's legislature likely intended for "unreasonable physical constraint" to mean what it means under the California statute. California case law interpreting the phrase "unreasonable physical constraint" should guide the interpretation of ORS 124.105(2).

Two cases demonstrate how California courts apply the standard for "unreasonable physical constraint." In one case, the court states that "unreasonable physical constraint" means "actions which actually prevent the elderly from moving freely, like locking them in." *Hardin v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1181 (E.D. Cal. 2011). The court held that there was no unreasonable physical constraint when an elderly employee was prevented from parking in a handicap parking spot and sitting on a stool while working. *Id.* at 1171-1181.

In another case, the California Court of Appeals found that a nursing administrator should have reported a nursing assistant for physical abuse when the assistant "grabbed the victim around the neck with his right arm," pinning his arms behind him and "forced the victim to the floor." *People v. Davis*, 126 Cal. App. 4th 1416, 1422-23 (2005). The court stated that the administrator should "have reasonably recognized that the [nursing assistant's] conduct at least arguably constituted assault, battery or unreasonable physical constraint." *Id.* at 1432. *Davis* provides an example of conduct that likely satisfies California's standard for an unreasonable physical constraint.

The nursing assistant's conduct in *Davis* involved a significant use of force and a restriction of the victim's movement. The court in *Hardin* articulated that an unreasonable physical constraint involves a restriction on free movement. This indicates that under the California statute, physical force and restriction of free movement are necessary elements of unreasonable physical constraint. Therefore, "unreasonable physical constraint" as it appears in ORS 124.105(2) should be interpreted to require both physical force and the restriction of free movement because the Oregon Legislature intended for the phrase to be interpreted as it is interpreted by California courts.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

In this case, Plaintiff cannot establish that he was subjected to an unreasonable physical constraint when he was placed in a hotel room for one night with ODHS workers. There are no allegations that force was used against plaintiff and no testimony supporting a claim of physical force. Although plaintiff was placed in a hotel room with ODHS workers supervising him, he was not physically restrained and could have left the room, as he did in several foster placements.

Plaintiff's VPA allegations are of criminal mistreatment by ODHS and unreasonable physical constraint. The intent element of criminal mistreatment cannot be established. There is no evidence of physical constraint. Accordingly, ODHS is entitled to partial summary judgment on the Sixth Claim.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

Page 11 - STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
JSS/sm5/

## CONCLUSION

If plaintiff can proof the allegations that ODHS workers engaged in sexual activity in the hotel room, plaintiff has civil rights claims against those workers. Plaintiff also states several common law claims that present issues of fact for trial. But the Fourth, Fifth and Sixth Claims are appropriate for summary judgment. The wrong workers were named in the Fourth Claim. The Fifth Claim is moot. The Sixth Claim cannot be established as a matter of law. The state defendants are entitled to partial summary judgment eliminating these claims.

DATED June __7__, 2024.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


_s/ James S. Smith_
JAMES S. SMITH #840932
Senior Assistant Attorney General
AARON D. KELLEY #210615
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
James.S.Smith@doj.state.or.us
aaron.kelley@doj.state.or.us
Of Attorneys for State of Oregon, Daeschner,
and Pakseresht

JSS/sm5/

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000