UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| YANKO GRATREAK, | Case No. 3:19-cv-01870-AR |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| THE STATE of OREGON, by and through its DEPARTMENT OF HUMAN SERVICES; MARK WALSH, an individual; KATE GUY, an individual; STACEY DAESCHNER, an individual; DOES I, II, and III, as individuals; and FARIBORZ PAKSERESHT, in his official capacity as the Director of DHS, | |
| Defendants. | |

**ARMISTEAD, United States Magistrate Judge**

Plaintiff Yanko Gratreak[1] is a former foster child who was previously in the custody of Oregon Department of Human Services (DHS). Defendants are the State of Oregon and current

---

[1] Gratreak originally filed this lawsuit on November 19, 2019, as "Y.G. a minor child, by and through his next friend, Steven J. Russell." (*See* Compl., ECF 1.) Russell and his wife were former foster parents to Gratreak. (*Id*. ¶ 4.) Gratreak is no longer a minor child and brings this action on his own.

or former DHS employees. Gratreak brings nine claims under federal and state law alleging that defendants deprived him of essential services and subjected him to abuse. Gratreak alleges violations of 42 U.S.C. § 1983, ORS § 124.100, and state tort law.

The court now considers a motion for partial summary judgment filed by defendants State of Oregon, Stacey Daeschner, and Fariborz Pakseresht (state defendants) on Claims 4, 5, and 6. (State Defs.' Mot. Partial Summ. J. (Defs.' Mot.), ECF 75.) In response to state defendants' motion, Gratreak stipulates to the dismissal of Claim 5 and to the dismissal of Claim 6 as to defendants Mark Walsh and Kate Guy. (Pl.'s Opp. to Defs.' Mot. (Resp.), ECF 86.) Walsh and Guy filed motions for joinder. (ECFs 79, 80.)

For the reasons below, the court recommends the following: (1) granting in part and denying in part state defendants' motion for partial summary judgment, (2) granting Walsh's motion for joinder, and (3) granting Guy's motion for joinder.

## BACKGROUND

The facts below are based on evidence and pleadings submitted by Gratreak and state defendants. Although most of the facts are supported by the record, this section also includes factual information that was asserted by Gratreak and state defendants that is not necessarily tied to the record but is nonetheless undisputed and helpful to framing the issues and arguments before the court.

Gratreak was born in Bulgaria on March 3, 2004. (Huggins Decl. Ex. 1 at 1, ECF 77-1.) Gratreak was raised in a Bulgarian orphanage and came to the United States at the age of 12 or 13 when he was adopted by an Oregon couple. After Gratreak came to Oregon, his adoption fell through, and he became a ward of the State of Oregon through DHS. (Compl. ¶ 7; Defs.' Mot at

Page 2 – FINDINGS AND RECOMMENDATION
*Gratreak v. State of Oregon*, 3:19-cv-01870-AR

2.[2]) When Gratreak entered into DHS's care in June 2018, his permanency worker, or caseworker, was Jackie Nix. (Daeschner Decl. ¶ 3, ECF 76.) Nix worked in DHS's Polk County office and was supervised by Chad Blackman. (*Id.*) Stacy Daeschner was the Program Manager for DHS's offices in Polk and Yamhill counties. (*Id.* ¶ 1.)

Because of Gratreak's upbringing in the Bulgarian orphanage, he has psychological, emotional, and behavior challenges and has been educationally delayed. Gratreak's native language is Bulgarian, but he does not speak or write well in that language. Gratreak has limited English proficiency and needs a qualified Bulgarian interpreter to reasonably communicate with others. (Compl. ¶ 7; Defs.' Mot at 2.) Gratreak alleges that DHS did not provide him with a Bulgarian translator. (Compl. ¶ 15.)

While Gratreak was in the care and custody of DHS, the agency placed him in foster homes, residential facilities, and juvenile detention. (Huggins Decl. Ex. 1 at 1-2.) On November 20, 2018, DHS arranged temporary housing for Gratreak by placing him overnight in a hotel room under the supervision of defendants Mark Walsh and Kate Guy, two DHS employees. (*Id.* at 1; Compl. ¶ 18.) Gratreak alleges that Walsh and Guy were having a sexual affair and had sex in front of him in the hotel room on the night of November 20, 2018. (*Id.* ¶ 19.)

---

[2]   Gratreak asks the court to give state defendants' background section "little weight" because it fails to include citations to the record as required by FED. R. CIV. P. 56 and LR 56-1. (Resp. at 19-20.) As noted above, however, where the parties assert *undisputed* facts that are relevant and helpful to framing the issues, the court may include that information, even where it may lack a citation to the record. Gratreak also asks the court to strike the declaration of Shawna Bennett because it is not based on personal knowledge as required under Rule 56 and constitutes hearsay and embedded hearsay. (Resp. at 20.) The court does not rely on or cite that declaration and therefore finds it unnecessary to reach Gratreak's argument.

Page 3 – FINDINGS AND RECOMMENDATION
*Gratreak v. State of Oregon*, 3:19-cv-01870-AR

Shortly thereafter, DHS transferred Gratreak to the Red Rock Academy Residential Treatment Center in Utah (Red Rock). (Huggins Decl. Ex. 1 at 1; Compl. ¶ 21; Defs.' Mot. at 2.) At Red Rock, Gratreak was denied a Bulgarian interpreter and was assaulted by other youth. (*Id.*; Compl. ¶ 23.) In April 2019, a riot took place at Red Rock that caused the facility to shut down, and DHS returned Gratreak to Oregon. (*Id.* ¶ 25; Defs.' Mot. at 2.)

Gratreak is now an adult and remains in the care of DHS under a voluntary program called Another Permanency Plan Living Arrangement. (Huggins Decl. ¶ 3.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment bears the burden of establishing the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates that no issue of material fact exists, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A party cannot defeat a summary judgment motion by relying on the allegations set forth in the complaint, on unsupported conjecture, or on conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Summary judgment thus should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In determining whether to grant summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Curley v. City of North Las Vegas*, 772 F.3d 629, 631 (9th Cir. 2014); *Hernandez*, 343 F.3d at 1112. All reasonable doubt as to the existence of a

genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). But deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED R. CIV. P. 56(e). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Chong v. STL Int'l, Inc.*, 152 F. Supp. 3d 1305, 1309 (D. Or. 2016). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

## DISCUSSION

State defendants seek summary judgment on Claims 4, 5, and 6. (Defs.' Mot. at 2.) Each claim is discussed in turn below.

**A.    Section 1983 Substantive Due Process (Claim 4)**

In Claim 4, Gratreak alleges that Daeschner violated his constitutional rights by denying him access to Bulgarian interpreters and to materials written in Bulgarian which were "necessary for [his] safety, care, treatment, and education." (Compl. ¶ 47.) State defendants argue that Daeschner is entitled to summary judgment on Claim 4 because "it was not [her] responsibility to make decisions concerning [Gratreak]'s need for an interpreter." (Defs.' Mot. at 3.)

**1.    Standards**

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state

Page 5 – FINDINGS AND RECOMMENDATION
*Gratreak v. State of Oregon*, 3:19-cv-01870-AR

law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Benavidez v. County of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Atkins*, 487 U.S. at 48).

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A defendant may be held liable as a supervisor under § 1983 "'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). The requisite showing can be established by demonstrating that the supervisor "set[] in motion a series of acts by others" or "knowingly refused to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict constitutional injury." *Id.* at 1207-08 (simplified). A supervisor can also be liable in his or her individual capacity for his or her "own culpable action or inaction in the training, supervision, or control of his or her subordinates[,]" for his or her "acquiescence in the constitutional deprivation[,]" or "for conduct that showed reckless or callous indifference to the rights of others." *Id.* at 1208 (simplified).

**2.      Analysis**

State defendants do not dispute that Gratreak never received Bulgarian translation services from DHS or that the failure to do so violated his substantive due process rights under

Page 6 – FINDINGS AND RECOMMENDATION
*Gratreak v. State of Oregon*, 3:19-cv-01870-AR

the Fourteenth Amendment.[3] Rather, state defendants argue that Daeschner is entitled to summary judgment on Claim 4 because, in her role as Program Manager she "was never involved in making decisions concerning the use of interpreters or other services for [Gratreak]." (Defs.' Mot. at 6.) State defendants rely on evidence that demonstrates the following: From June 2012-February 2019, Daeschner served as DHS's Program Manager for Polk and Yamhill Counties. (Daeschner Decl. ¶ 1.) As a Program Manager, it was Daeschner's responsibility to "manage the office and the staff, not to make decisions on treatment or services for particular individuals." (*Id.* ¶ 2.) At DHS, "[p]ermanency workers"—also known as caseworkers, "make the decisions" for the clients on their case list in conjunction with their supervisors. From June 2018-February 2019, Jackie Nix was Gratreak's permanency worker, and Nix's supervisor was Chad Blackman. (*Id.* ¶ 3.) Decisions as to whether "[Gratreak] needed an interpreter were made by his caseworker[, Nix,] and her supervisor[, Blackman]." (*Id.*) Daeschner had no supervisory authority over Nix or Blackman. (*Id.* ¶ 2.)

State defendants argue that "there are no allegations or evidence that acts by Daeschner caused the alleged discrimination against [Gratreak]" or that she "set in motion a series of acts that she knew or should have known would result in discrimination." (Defs.' Mot. at 6.) State defendants argue that Daeschner is entitled to summary judgment on Claim 4 because there is no supervisory liability under § 1983, and Claim 4 simply "names the wrong state worker." (*Id.*)

---

[3]   In the complaint, the title for Gratreak's Fourth Claim for Relief is, "42 U.S.C. § 1983 Civil Rights Claim for Discrimination based on Nationality against Walsh, Daeschner, and Doe Defendants." (*Id.* ¶ 18.) Although the title suggests that Gratreak alleges a violation of the Equal Protection Clause under the Fourteenth Amendment, the parties' pleadings construe Claim 4 as alleging a violation of Gratreak's substantive due process rights under the Fourteenth Amendment.

Page 7 – FINDINGS AND RECOMMENDATION
*Gratreak v. State of Oregon*, 3:19-cv-01870-AR

State defendants have carried their initial burden of production under Rule 56(a) and have established the absence of a genuine issue of material fact as to whether Daeschner had any role in Gratreak being denied a Bulgarian translator or written materials in Bulgarian. *See Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . . demonstrat[ing] the absence of a genuine issue of material fact."). Based on state defendants' evidence and arguments, no reasonable jury could find that Daeschner was involved in or responsible for providing Gratreak with translation services or could find her liable for the alleged violation of his civil rights under § 1983. *See Taylor*, 880 F.2d at 1045.

Yet Gratreak points to excerpts from Daeschner's and Nix's depositions, among others, that create a genuine issue of material fact as to Daeschner's knowledge of Gratreak's need for a translator and regarding her role in providing services for Gratreak. That evidence demonstrates the following: As DHS Program Manager of Polk County, Daeschner regularly spent time in the Polk County office and became professionally acquainted with Gratreak. (Healy Decl. Ex. 4, Deposition of Stacey Daeschner (Daeschner Depo.) 32:12-18, ECF No. 87-4.) Gratreak was in that office "quite a bit" and would "come and sit in [Daeschner's] office with [her]." (*Id.*) Daeschner was aware that DHS was not meeting Gratreak's needs and understood that Gratreak experienced difficulties with communication and that he could not understand some of the things that were expected of him because of the language barrier. (*Id.* 14:22-25, 35:22-24.) Daeschner could not recall whether she had ever tried to find translation services for Gratreak but knew that such services were available through DHS. (*Id.* 34:11-21.) Daeschner also knew that DHS was obligated to provide language interpreters to non-English speaking foster children including

Page 8 – FINDINGS AND RECOMMENDATION
*Gratreak v. State of Oregon*, 3:19-cv-01870-AR

Gratreak and to provide for their physical, behavioral, and educational needs. (*Id.* 36:5-17, 50:9-16.)

Additionally, when DHS transferred Gratreak from Oregon to the Red Rock, DHS staff was aware that Red Rock did not have adequate language services for Gratreak. (Healy Decl. Ex. 5, Deposition of Sara Fox (Fox Depo.) 49:10-17, ECF 87-5.) Daeschner was involved in and partially responsible for the decision to transfer Gratreak out of state. (Healy Decl. Ex. 3, Second Deposition of Jaclyn Nix (Second Nix Depo.) 11:25-12:10, ECF 87-3.) Nix was not involved in the decision to transfer Gratreak to Red Rock, and Daeschner did not consult with her regarding that decision. (*Id.* 13:17-20; Healy Decl. Ex. 2, First Deposition of Jaclyn Nix (First Nix Depo.) 67:5-19, ECF 87-2.) At some point, however, Nix spoke with Daeschner and shared her opinion that Red Rock was not proper for Gratreak and that he should remain in the placement he had at that time. (Second Nix Depo. 26:20-27:1; Healy Decl. Ex. 6, Deposition of Tammy Chatfield (Chatfield Depo.) 63:7-19, ECF 87-6.) Gratreak's court-appointed special advocate, Tammy Chatfield, also felt that Red Rock was not a good placement for Gratreak and conveyed her concerns to Nix and the court. (*Id.* 63:10-64:6.)

Once Gratreak was at Red Rock, Chatfield reported the lack of interpretation services and other concerns to the court. (*Id.*) Chatfield understood that Daeschner and other managers had decided to keep Gratreak at Red Rock but nevertheless "continued to advocate that he get out of there ASAP." (*Id.* 98:11-24.)

Viewing that evidence in the light most favorable to Gratreak, a reasonable jury could find that Daeschner, (1) was aware of Gratreak's significant need for language translation services, (2) knew that DHS was not meeting its obligation to provide him with such services, (3)

Page 9 – FINDINGS AND RECOMMENDATION
*Gratreak v. State of Oregon*, 3:19-cv-01870-AR

failed to take any corrective action, and (4) participated in and approved DHS's decision to transfer Gratreak to Red Rock—despite knowing that there were inadequate translation services there. Thus, a reasonable jury could find Daeschner liable for violating Gratreak's substantive due process rights based on "her personal involvement in the constitutional deprivation," for her "'own culpable action or inaction in the training, supervision, or control of [her] subordinates[,]" or for her "acquiescence" in the alleged deprivation. See *Starr*, 652 F.3d at 1207-08. State defendants' motion for summary judgment on Claim 4 should be denied.

**B.    *Civil Rights Claims for Injunctive Relief (Claim 5)***

In Claim 5, Gratreak seeks injunctive relief against DHS regarding the provision of translation services and reasonable housing placements. (Compl. ¶ 51.) State defendants argue that Gratreak's fifth claim is moot because his age and relationship with DHS have changed since he initially filed this action, which has made the chance that the alleged violations will recur "exactly zero." (Defs.' Mot. at 7.) Gratreak concedes state defendants' motion as to his fifth claim for relief. (Resp. at 1.) State defendants are therefore entitled to summary judgment on Claim 5.

**C.    *ORS § 124.100 Abuse of a Vulnerable Person (Claim 6)***

In Claim 6, Gratreak alleges that he suffered physical abuse in violation of the Vulnerable Persons Act when DHS workers "ha[d] sex in his presence" at the hotel room and when DHS "subject[ed] him to assaults at Red Rock[.]" (Compl. ¶ 54, citing ORS § 124.100.) Gratreak alleges that DHS's actions constituted "criminal mistreatment" as defined by ORS § 163.200(1), which is a form of physical abuse under ORS § 124.105(1)(d), and involved the use of

"unreasonable physical constraint[,]" another form of physical abuse under ORS § 124.105(2). (*Id*.)

State defendants argue that they are entitled to summary judgment on Claim 6 because no reasonable jury could find that DHS engaged in conduct that would constitute physical abuse.

1.  **Standards**

ORS § 124.100(2) provides a civil cause of action for "[a] vulnerable person who suffers injury, damage or death by reason of physical abuse or financial abuse[.]" Under ORS § 124.105(1)(d), "physical abuse" includes "criminal mistreatment" as defined under ORS § 163.200 which provides as follows:

> (1) A person commits the crime of criminal mistreatment in the second degree if, with criminal negligence and:
>
> (a) In violation of a legal duty to provide care for another person, the person withholds necessary and adequate food, physical care or medical attention from that person; or
>
> (b) Having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, the person withholds necessary and adequate food, physical care or medical attention from that person.

An action may also be brought under ORS § 124.100 for physical abuse "if the defendant used any unreasonable physical constraint on the vulnerable person." ORS § 124.105(2).

2.  **Analysis**

State defendants argue that Gratreak cannot prevail on Claim 6 in which he alleges violations of ORS § 124.100 because, (1) "no reasonable juror could conclude that sending qualified and trained workers to carry out an agency policy was criminal negligence," and (2) Gratreak "cannot establish that he was subjected to an unreasonable physical constraint when he

was placed in a hotel room for one night with []DHS workers." (Defs.' Mot. at 9-11.) State defendants fail to address the portion of Claim 6 that alleges physical abuse based on DHS's decision to transfer Gratreak to Red Rock.

State defendants also misconstrue Gratreak's allegations and "ignore[] the critical basis of [his] ORS § 124.100 claim." (Resp. at 16.) In Claim 6, Gratreak alleges that two DHS employees—defendants Walsh and Guy—had sex in front of him while they were tasked with supervising him in a hotel on the night of November 21, 2018, and he alleges that this conduct constituted physical abuse under ORS § 124.100. To prevail on his claim, Gratreak does not need to "establish that sending properly trained workers to follow an applicable agency policy is criminal negligence"—as state defendants contend. (*See* Defs.' Mot. at 8.) Rather, to establish a violation of ORS § 124.100, Gratreak would need to prove that DHS staff had sex in front of him and that those actions constituted a withholding of physical care—*i.e.*, criminal misconduct under ORS § 163.200(1), or equated to an unreasonable physical constraint under ORS § 124.105(2).

Although state defendants do not dispute that Walsh and Guy had sex in Gratreak's presence, they fail to acknowledge that conduct as the basis of Gratreak's claim under ORS § 124.100. Thus, even assuming that Walsh and Guy were qualified and trained to supervise Gratreak in the hotel room as state defendants contend, state defendants fail to demonstrate that there is no genuine issue of material fact as to whether DHS workers had sex in front of Gratreak or whether that conduct constituted "criminal mistreatment" under ORS § 163.200. State defendants appear to concede as much in noting that there "certainly may be issues of fact

concerning whether Walsh and/or Guy committed criminal mistreatment[.]" (Reply at 5, ECF No. 92.)

State defendants also fail to demonstrate that there is no genuine issue of material fact as to whether Walsh and Guy's sexual conduct constituted an unreasonable physical constraint under ORS § 124.105(2). State defendants argue that "placement of [Gratreak] in a hotel room does not qualify as physical constraint under ORS § 124.105(2)[,]" and they cite cases that interpret a similar law in California to bolster their argument. (Defs.' Mot. at 10-11.) Again, however, the crux of Claim 6 is not that Gratreak suffered physical abuse from staying overnight in a hotel with trained DHS workers; rather, Gratreak alleges that "DHS imposed an unreasonable physical constraint on [him] in violation of ORS 124.105(2) because it confined [him] in a motel room where he could not escape the sexual acts being performed there." (Compl. ¶ 54(b).) State defendants fail to address whether a reasonable jury could find that Walsh and Guy's sexual conduct constituted an unreasonable physical constraint on Gratreak. State defendants may be correct that the term "physical constraint" as used in ORS § 124.105(2) requires "both physical force and the restriction of free movement[,]" (Defs.' Mot at 10), but they fail to apply those standards to the actual factual allegations underlying Claim 6 and therefore fail to show that they are entitled to summary judgment on that claim.

In their reply, state defendants cite the Oregon Tort Claims Act (OTCA) as an additional basis for challenging Claim 6. (Reply at 4-5.) State defendants argue that, under the OTCA, ORS § 30.285(3), DHS cannot be held liable for the acts of Walsh and Guy unless Gratreak can show that their actions were taken "within the course and scope of their employment" and were not "willful misconduct." (*Id.* at 5.) However, state defendants failed to assert that ground for

Page 13 – FINDINGS AND RECOMMENDATION
*Gratreak v. State of Oregon*, 3:19-cv-01870-AR

seeking summary judgment on Claim 6 in its motion for partial summary judgment and cannot do so for the first time in its reply. *See Hobus v. Howmedica Osteonics Corp.*, 699 F. Supp. 3d 1122, 1138 (D. Or. 2023), *aff'd*, No. 23-3528, 2025 WL 25694 (9th Cir. Jan. 3, 2025) (refusing to address an argument the defendant raised for the first time in its reply brief) (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.")).

In sum, state defendants do not squarely address Gratreak's allegations that he suffered physical abuse from Walsh and Guy having sex in front of him in the hotel room and from DHS's decision to transfer him to Red Rock. Because state defendants fail to address the specific factual allegations underlying Gratreak's claim under ORS § 124.100, they fail to show that no reasonable jury could find them liable for physical abuse under that statue. State defendants' motion for summary judgment on Claim 6 should be denied.

D.  *Walsh and Guy's Motions for Joinder*

Walsh filed a motion to join state defendants' motion for partial summary judgment, *see* ECF 79, and Guy filed a motion to join Walsh's motion for joinder, *see* ECF 80. No opposition has been filed in response to Walsh or Guy's motions. Those motions should therefore be granted.

## CONCLUSION

For the above reasons, state defendants' motion for partial summary judgment (ECF 75) should be GRANTED as to Claim 5 and DENIED as to Claims 4 and 6. Walsh's motion for joinder (ECF 79) should be granted, and Guy's motion for joinder (ECF 80) should be granted.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 14 days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within 14 days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: July 30, 2025.

_____
JEFF ARMISTEAD
United States Magistrate Judge